Filed 1/23/25  In re Y.B. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Y.B. et al., Persons Coming Under the Juvenile Court Law. | B338126<br><br>(Los Angeles County Super. Ct. No. 19CCJP02809A–B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>C.R.,<br><br>     Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Pete R. Navarro, Juvenile Court Referee.  Affirmed and remanded.

Lillian Hamrick, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

C.R. (mother) appeals from orders selecting legal guardianship as the permanent plan for minor N.B. and terminating dependency jurisdiction over him, and an order selecting another planned permanent living arrangement for minor Y.B.  Mother contends the juvenile court's findings under the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1900 et seq.) were erroneous because the court failed to ask the children's maternal grandparents on the record whether the children are or may be Indian children.  Mother further argues the ICWA finding as to Y.B. must be reversed because the Los Angeles County Department of Children and Family Services (DCFS) failed to make ICWA inquiries of any paternal relatives.  DCFS concedes the matter must be remanded for further inquiry of Y.B.'s paternal relatives.  We reject mother's argument related to the maternal grandparents but agree that on remand DCFS must attempt to make ICWA inquiries of Y.B.'s paternal relatives.

**FACTUAL AND PROCEDURAL BACKGROUND**

In June 2019, the juvenile court sustained an amended petition asserting Y.B. (born in 2008) and N.B. (born in 2014) were persons described by Welfare and Institutions Code section 300, subdivisions (a), (b), and (j),[1] based on mother's physical abuse of Y.B., her inappropriate physical discipline of

———————————————

[1]     All further statutory references are to the Welfare and Institutions Code.

2

N.B., and her history of mental and emotional problems.[2]  The court declared Gustavo B. to be Y.B.'s presumed father. Although mother initially indicated Gustavo B. was also N.B.'s father, DNA testing established that he was not.  Mother did not provide the names of any other potential fathers.  The identity of N.B.'s father remained unknown for the duration of the proceedings.  In July 2019, the juvenile court asserted dependency jurisdiction over the children and removed them from mother.  Gustavo B. did not request custody of Y.B.  The children were placed in foster care.

Mother did not reunify with the children and Gustavo B. did not obtain custody of Y.B.[3]  The children remained in a foster care placement for almost five years.  Finally, in April 2024, the juvenile court appointed the children's caregivers to be N.B.'s legal guardians and terminated dependency jurisdiction over him.  As to Y.B., neither the caregivers nor Y.B.—now 16 years old—wished to pursue legal guardianship.  The court ordered Y.B. into another planned permanent living arrangement. (§ 366.26, subd. (c)(4)(B)(ii).)  This appeal followed.

As to ICWA, at the outset of the case, DCFS reported mother had previously denied having any American Indian ancestry and said she was born in Nicaragua.  In May 2019, mother submitted a parental notification of Indian status form,

---

[2]     The petition also concerned the children's younger sibling, A.R.  The juvenile court's orders regarding A.R. are not at issue in this appeal.

[3]     The juvenile court terminated Gustavo B.'s reunification services at the first six-month review hearing.  He did not visit Y.B. during the first review period and did not respond to DCFS's attempt to contact him.

indicating she had no Indian ancestry as far as she knew. The juvenile court found ICWA did not apply as to mother. In June 2019, Gustavo B. also submitted a parental notification of Indian status form, indicating he had no Indian ancestry as far as he knew. In September 2019, the juvenile court found it had no information to believe the matter fell under ICWA "as far as [Gustavo B.] is concerned."

Although the maternal grandparents were present at several initial hearings, the juvenile court did not address them directly regarding whether the children may be Indian children. However, according to subsequent DCFS reports, on March 24, 2023, June 20, 2023, and March 5, 2024, the maternal grandparents denied having any Native American ancestry, with the maternal grandmother reporting she and the maternal grandfather are "descendants of Nicaragua." The record does not indicate that DCFS had any contact with any of Gustavo B.'s relatives for any purpose, including inquiring about ICWA, although a paternal aunt was mentioned in one early report.

## DISCUSSION

Mother's sole contention on appeal is that the juvenile court and DCFS failed to carry out their statutory duties of inquiry under ICWA by failing to ask the maternal grandparents about the children's Indian ancestry, if any, on the record in open court, and, with respect to Y.B., by failing to attempt to interview any paternal relatives about ICWA. On appeal, DCFS concedes the inquiry as to the paternal side of Y.B.'s family was inadequate,[4] but contends the juvenile court's no ICWA finding as to mother's

---

[4]     On appeal, DCFS indicates it "does not oppose" remand for further ICWA inquiry of Y.B.'s paternal extended family. We deem this a concession.

4

side of the family was proper.  We agree with DCFS and affirm, remanding the matter for further inquiry of Y.B.'s paternal family.

The California Supreme Court recently summarized the duties of the court and the social services agency in determining whether a child is an Indian child.  "Section 224.2 codifies and expands on ICWA's duty of inquiry to determine whether a child is an Indian child.  [Fn. omitted.]  Agencies and juvenile courts have 'an affirmative and continuing duty' in every dependency proceeding to determine whether ICWA applies by inquiring whether a child is or may be an Indian child.  (§ 224.2, subd. (a).)  This 'duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child.'  (*Ibid*. [former subd. (a)]; see also [Cal. Rules of Court,] rule 5.481(a); [citation].)"  (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1131–1132 (*Dezi C.*).)

"Section 224.2, subdivision (b) specifies that once a child is placed into the temporary custody of a county welfare department, the duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.'  [Fn. omitted.][5]  (See also [Cal. Rules of Court,] rule 5.481(a)(1).)  '[E]xtended family member' means 'a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or

---

[5]     Following statutory amendments effective September 2024, this language is now reflected in section 224.2, subdivision (b)(2).

second cousin, or stepparent.' (25 U.S.C. § 1903(2); see also § 224.1, former subd. (c) [adopting ICWA definition of 'extended family member'].) [¶] While this duty of inquiry is sometimes referred to as the initial duty of inquiry, this is a bit of a misnomer, as the duty 'continues throughout the dependency proceedings.' [Citations.]" (*Dezi C.*, *supra*, 16 Cal.5th at p. 1132.)

Under current section 224.2, subdivision (c), "[f]or a court presiding over any juvenile proceeding that could result in placement of an Indian child with someone other than a parent or Indian custodian . . . the duty to inquire begins at the first hearing on a petition. At the commencement of the hearing, the court shall ask each party to the proceeding and all other interested persons present whether the child is, or may be, an Indian child, whether they know or have reason to know that the child is an Indian child, and where the child, the parents, or Indian custodian are domiciled, as defined in Section 224.1. Inquiry shall also be made at the first appearance in court of each party or interested person who was not present at the first hearing on the petition. The inquiry and responses shall occur on the record."

Here, as to both children, mother argues on appeal that the juvenile court erred in failing to make the inquiries described in section 224.2, subdivision (c), of the maternal grandparents when they were present in court. However, as DCFS points out, the maternal grandparents appeared in court twice in 2019, once in 2020, and maternal grandmother attended a portion of one hearing in 2022. At the time, section 224.2, subdivision (c) did not require that the juvenile court conduct an ICWA inquiry on the record of all "interested persons." Instead, the prior version of the law mandated that "[a]t the first appearance in court of

6

each party, the court shall ask of *each participant* present in the hearing whether *the participant* knows or has reason to know that the child is an Indian child." (§ 224.2, former subd. (c), italics added.) Although the maternal grandparents were present at early hearings, they were not parties and did not participate in the hearings. Mother has not argued that under the former version of the statute, the juvenile court erred in failing to make a direct inquiry of the maternal grandparents on the record.[6]

Moreover, even if the juvenile court were required to conduct an in-court inquiry of the maternal grandparents in 2019, 2020, or 2022, we would conclude that mother's argument has been rendered moot by subsequent events. In 2023 and 2024, DCFS asked the maternal grandparents on three occasions about the family's Indian ancestry and reported the results to the court. Mother does not contend other relatives should have been interviewed or that DCFS's inquiry of the maternal grandparents was insufficient. The maternal grandparents are not parties to the proceedings. The record does not indicate that they have attended any hearings since 2022. It is unclear what further relief this court could provide under these circumstances. (*In re D.P.* (2023) 14 Cal.5th 266, 276 [case becomes moot if no effective relief can be granted, even if appellant prevails].) We therefore find no basis to conditionally reverse the juvenile court's orders as to N.B. or to remand for further proceedings as to Y.B. related to potential Indian ancestry through the maternal family.

We agree with the parties, however, that remand is required for the juvenile court to direct DCFS to conduct further inquiries of Gustavo B.'s family members. The record indicates DCFS asked only Gustavo B. whether Y.B. is or may be an Indian

---

[6] Mother opted not to file a reply brief in this appeal.

7

child.  There is no indication that DCFS attempted to contact any extended family members.  Further, there is no information in the record suggesting the limited inquiry may have been nonetheless adequate.  (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141 [court expressly did not decide what constitutes an adequate and proper inquiry necessary to satisfy § 224.2].)  Substantial evidence does not support the juvenile court's finding that ICWA does not apply as to Gustavo B., or the implied finding that DCFS's inquiry as to Gustavo B. was proper, adequate, and duly diligent.  (*Id.* at p. 1137; *In re Josiah T.* (2021) 71 Cal.App.5th 388, 401.)

Y.B. remains under the juvenile court's jurisdiction.  The matter is continuing, as the juvenile court ordered Y.B. into another planned permanent living arrangement, which requires ongoing court supervision.  (§ 366.3, subd. (d).)  Further, DCFS concedes its ICWA inquiry of Y.B.'s paternal family was inadequate since it failed to attempt to contact Gustavo B.'s available relative.  "So long as proceedings are ongoing and all parties recognize the *continuing* duty of ICWA inquiry, both the Agency and the juvenile court have an adequate opportunity to fulfill those statutory duties."  (*In re S.H.* (2022) 82 Cal.App.5th 166, 179.)  We therefore do not conditionally reverse the juvenile court's April 25, 2024 orders as to Y.B.  We instead vacate the juvenile court's September 24, 2019 finding that ICWA did not apply with respect to Gustavo B. and direct the juvenile court to conduct further proceedings consistent with section 224.2 and the court and DCFS's continuing ICWA inquiry duty.

8

## DISPOSITION

The juvenile court orders are affirmed and the matter remanded for further proceedings.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

HANASONO, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.